UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

No. 07-2628RD

UNITED STATES OF AMERICA

vs.

ESNARDO CABRERA HERNANDEZ,

    **Defendant.**
_____/

## CRIMINAL COVER SHEET

1. Did this matter originate from a matter pending in the United States Attorney's Office prior to April 1, 1999? ____ Yes __x__ No

   If yes, was it pending in the Central Region?
   ____ Yes ____ No

2. Did this matter originate from a matter pending in the United States Attorney's Office prior to April 1, 2003? ____ Yes __x__ No

3. Did this matter originate from a matter pending in the Narcotics Section (Miami) of the United States Attorney's Office prior to May 18, 2003? ____ Yes __x__ No

4. Did this matter originate from a matter pending in the Northern Region of the United States Attorney's Office prior to October 14, 2003? ____ Yes __x__ No

                                                Respectfully submitted,

                                                R. ALEXANDER ACOSTA
                                                UNITED STATES ATTORNEY

BY: _____
       RANDALL D. KATZ
       ASSISTANT UNITED STATES ATTORNEY
       Court I.D. Number A5500942
       99 N. E. 4th Street
       Miami, Florida 33132-2111
       TEL: (305) 961-9421
       FAX: (305)530-7976
       EMAIL: Randy.Katz@usdoj.gov

# United States District Court

_____SOUTHERN_____ DISTRICT OF _____FLORIDA_____

UNITED STATES OF AMERICA

v.

ESNARDO CABRERA HERNANDEZ

**CRIMINAL COMPLAINT**

CASE NUMBER: 07-2628RLD

I, the undersigned complainant, being duly sworn, state the following is true and correct to the best of my knowledge and belief. On or about March 12, 2007 and continuing through on or about April 24, 2007, in Miami-Dade County, in the Southern District of Florida, the defendant, ESNARDO CABRERA HERNANDEZ, did knowingly and willfully execute, and attempt to execute, a scheme or artifice–(1) to defraud any health care benefit program and (2) to obtain, by means of false and fraudulent pretenses, representations, and promises, any of the money and property owned by, and under the custody and control of, any health care benefit program, in connection with the delivery of and payment for health care benefits, items, and services purportedly provided by 1st Medical Supply, Inc., a company he owned, in violation of Title 18, United States Code, Sections 1347 and 2.

I further state that I am a Special Agent with the Federal Bureau of Investigation and that this complaint is based on the following facts:

SEE ATTACHED AFFIDAVIT

_____
SHAUN O'NEILL
SPECIAL AGENT
FEDERAL BUREAU OF INVESTIGATION

Sworn to before me, and subscribed in my presence,

MAY 10, 2007_____ at Miami, Florida_____
Date                                                                                    City and State

ROBERT L. DUBÉ
UNITED STATES MAGISTRATE JUDGE
Name and Title of Judicial Officer                                         Signature of Judicial Officer

## AFFIDAVIT

I, Special Agent Shaun O'Neill, being duly sworn, do hereby depose and state:

1. I am a Special Agent with the Federal Bureau of Investigation ("FBI"), and am currently assigned to the Miami Field Office. I have been employed in this capacity for nine years. Prior to becoming a Special Agent, I worked as a Financial Analyst for a large hospital system. I am a Certified Public Accountant with an active license. I am presently assigned to investigate violations of federal law, including conspiracies to commit health care fraud, false claims to Medicare, and false statements.

2. I am personally involved in conducting a joint investigation with other agents and officers, along with representatives from the Centers for Medicare & Medicaid Services ("CMS") and agents of CMS. The statements contained in this affidavit are based upon information provided by CMS and its representatives, a review of both public and private records, and interviews conducted by myself and other federal agents. Because this affidavit is submitted for the limited purpose of establishing probable cause, I have not included all facts known to me in this affidavit, and have only set forth the facts that I believe are necessary to establish probable cause.

3. Your Affiant submits that there is probable cause to believe that, from at least March 12, 2007 through on or about April 24, 2007, ESNARDO CABRERA HERNANDEZ ("HERNANDEZ") - through his company, 1ST MEDICAL SUPPLY, INC. ("1ST MEDICAL") - conspired with others to defraud Medicare by submitting and causing to be submitted to CMS and its agents, false claims for durable medical equipment ("DME") that were not actually provided to Medicare beneficiaries and that were not prescribed by medical doctors, in violation of 18 U.S.C. §§ 1347 and 2. After

1

receiving payments from Medicare for these fraudulent billings, it was the purpose of the conspiracy for HERNANDEZ and other coconspirators, namely, YOEL MIRANDA QUINTERO ("QUINTERO"), GUILLERMO COWLEY ("COWLEY"), ROLANDO MORALEDA ("MORALEDA"), YADIRA ALLUE ("ALLUE") and ISMAEL IRAOLA LAZANO ("LAZANO"), to evade federal currency transaction reporting requirements by causing structured withdrawals of 1ST MEDICAL money through cashing of checks less than $10,000 for their personal use and benefit, in violation of 31 U.S.C. § 5324(a)(3), all in violation of 18 U.S.C. § 371.

### The Federal Medicare Program

4.     Medicare is a federal insurance program that provides coverage for people age 65 years or older and for certain disabled people. The Department of Health & Human Services ("HHS") is responsible for the administration of the Medicare Program. CMS is the component agency of HHS that administers and supervises the Medicare Program. CMS has contracted with Trust Solutions Inc. ("Trust Solutions") and Palmetto GBA ("Palmetto"), to receive, adjudicate, process, and pay certain Medicare claims submitted by Medicare beneficiaries and medical service providers in Florida.

5.     HERNANDEZ and 1ST MEDICAL purport to provide DME to Medicare beneficiaries who are insured by Part B of the Medicare Program, which is a medical insurance program that pays providers and suppliers for goods and services, like DME. Any medical equipment that provides a therapeutic benefit or enables a patient to perform tasks that he or she is unable to otherwise undertake is considered by DME.

6.     The types of DME in this investigation include powered pressure reducing air mattresses, urinary leg bags, wound dressings, and external catheters. Such equipment

2

is paid for by Medicare Part B if it is medically necessary for the patients, who are also Medicare beneficiaries, and ordered by a treating physician.

7.  1ST MEDICAL is a DME company that sought and received reimbursement from Palmetto for DME equipment and supplies. 1ST MEDICAL, like all DME companies that bill Medicare, must follow Medicare's billing requirements, which include the obligations to: (a) bill Medicare for only reasonable and necessary medical services; (b) provide economical medical services when those services are medically necessary; (c) assure that services provided are not substantially in excess of the needs of such patients; and (d) not make false statements or misrepresentations of material facts concerning requests for payment under Medicare.

8.  In order to bill Medicare for services rendered, a DME company submits claims on Form 1500 (a claim form) to Palmetto. When a Form 1500 is submitted, the DME company certifies that the contents of the form are true, correct, complete and that the form was prepared in compliance with the laws and regulations governing the Medicare program. Some DME companies file claims directly with Palmetto, others contract with a billing service that processes the claims on behalf of DME companies.

9.  Before billing Medicare for DME provided to Medicare patients, a DME company must first obtain a prescription and certificate of medical necessity ("CMN") from a medical doctor for the Medicare beneficiary receiving the DME. Once the DME receives the prescription and CMN from the medical doctor, the DME company provides the necessary equipment. The DME company then submits a claim to Palmetto directly or sends a request for payment to a billing service, which in turn files the claim with Palmetto. DME companies indicate on their claims for payment which policy group

3

codes and procedures they are billing. Policy group codes and procedure codes indicate the types of equipment that Medicare is being billed for.

10. A Medicare claim is required to set forth, among other things, the beneficiary's name and Medicare identification number, the services performed for the beneficiary, the date the services were provided, the cost of the services, and the name and rendering unique provider identification number (UPIN) of the physician or other health care provider who ordered the services.

### Medicare Fraud Committed by HERNANDEZ

11. On February 10, 2006, 1ST MEDICAL was incorporated under the laws of Florida. On February 21, 2007, HERNANDEZ was added in the articles of incorporation as the sole owner, officer, director, and registered agent of 1ST MEDICAL.

12. 1ST MEDICAL's business address is 13370 SW 131 Street, Suite 103, Miami, Florida, 33186, as listed in corporate and Medicare records.

13. Prior to HERNANDEZ becoming the owner of the corporation, 1ST MEDICAL had received a Medicare provider number, 5762410001, and was eligible to submit claims to Medicare under that provider number.

14. During the period from on or about March 12, 2007, through April 24, 2007, 1ST MEDICAL submitted $2,513,328.19 in claims to Medicare, and was paid approximately $451,490.61 for services purportedly rendered to Medicare beneficiaries from the same time period. Out of these total billings, 165 claims totaling $51,266.12 were made after the date of the beneficiaries death. 1ST MEDICAL received payments from Medicare via electronic funds transfer ("EFT"). The EFTs were deposited into Bank of America account number 00556806XXXX ("Bank of America account"), which was

amended to reflect HERNANDEZ as the President and sole authorized signor of that account on March 5, 2007. HERNANDEZ's signature appears on all of the checks drawn on this account.

15. 1ST MEDICAL's top three referring and prescribing physicians are doctors Dr. R.M., Dr. B.R., and Dr. H.R. These doctors were interviewed and each stated that he or she did not prescribe any items billed using their names by 1ST MEDICAL.

16. Four patients who allegedly received equipment from 1ST MEDICAL were interviewed. Patients J.B., A.H., H.H., and B.M. all stated they did not receive any equipment from 1ST MEDICAL nor have they been treated by any of the referring/prescribing physician who allegedly treated each.

### Medicare Fraud Proceeds & Structuring Violations

17. Between March 21, 2007 and April 30, 2007, $456,206.63 in Medicare proceeds were deposited into the Bank of America account. Shortly after the deposits, the funds were depleted through checks written to, among others, various individuals.

18. Beginning on March 21, 2007 and continuing through at least April 30, 2007, HERNANDEZ signed over thirty checks, in even amounts, to various individuals with the majority of amounts ranging from $6,800 to $9,900. HERNANDEZ was the signor for all checks drawn against 1ST MEDICAL account during this time period, including one check and withdrawal made payable to himself, totaling $18,400.

19. A currency transaction report ("CTR") is a report that is filled out on a United States Department of Treasury ("Treasury"), Internal Revenue Service Form 4789. A bank or other financial institution is required by federal law to file a CTR with Treasury for each financial transaction that involves United States currency of more than $10,000.

5

Such transactions include deposits, withdrawals, exchanges of currency, or other payments or transfers by, through, or to the bank or other financial transaction.

20. After Medicare funds were deposited into the Bank of America account, many checks were written to various individuals under the $10,000 reporting requirement.

21. On or about March 26, 2007, HERNANDEZ made a withdrawal in the amount of $8,600 drawn on the Bank of America account. This transaction was recorded by bank surveillance cameras.

22. On or about April 18, 2007, GUILLERMO COWLEY cashed check number 1077 for $9,800. The check was signed by HERNANDEZ, drawn on the Bank of America account, and the transaction was recorded by bank surveillance cameras. COWLEY cashed 1ST MEDICAL checks in similar amounts on three other occasions.

23. On or about April 14, 2007, ROLANDO MORALEDA cashed check number 1063 for $8,700. The check was signed by HERNANDEZ, drawn on the Bank of America account, and the transaction was recorded on bank surveillance cameras. MORALEDA cashed 1ST MEDICAL checks in similar amounts on four other occasions.

24. On or about April 14, 2007, YADIRA ALLUE cashed check number 1065 for $7,900. The check was signed by HERNANDEZ, drawn on the Bank of America account, and the transaction was recorded by bank surveillance cameras. ALLUE cashed 1ST MEDICAL checks in similar amounts on seven other occasions.

25. On or about April 17, 2007, YOEL MIRANDA QUINTERO cashed check number 1069 for $8,600. The check was signed by HERNANDEZ, drawn on the Bank of America account, and the transaction was recorded by bank surveillance cameras. QUINTERO cashed one additional 1ST MEDICAL check in a similar amount.

26. On or about April 17, 2007, ISMAEL IRAOLA LAZANO cashed check number 1070 for $9,600. The check was signed by HERNANDEZ, drawn on the Bank of America account, and the transaction was recorded by bank surveillance cameras. LAZANO cashed 1ST MEDICAL checks in similar amounts on four other occasions.

27. Your Affiant submits there is probable cause to believe that HERNANDEZ knowingly and willfully committed health care fraud, in violation of 18 U.S.C. §§ 1347 and 2 and that COWLEY, MORALEDA, ALLUE, IRAOLA and QUINTERO did conspire to evade the reporting requirements of 31 U.S.C. § 5313(a) and the regulations prescribed thereunder, to structure, assist in structuring, and attempt to structure, transactions with one or more domestic financial institutions, in violation of 31 U.S.C. § 5324(a)(3), all in violation of Title 18 U.S.C. § 371.

I declare under penalty of perjury that the foregoing is true and correct this 10th day of May 2007, in Miami, Florida.

FURTHER AFFIANT SAYETH NAUGHT

_____
Shaun O'Neill
Special Agent
Federal Bureau of Investigation

Sworn to and subscribed before me this 10 day of May, 2007, in Miami, Florida

_____
ROBERT L. DUBÉ
UNITED STATES MAGISTRATE JUDGE

7